# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| MICHAEL ANGEL GARZA and<br>NEECO KAY GARZA, as Next Friend<br>of MATTHEW GARRICK GARZA,<br>a minor,<br><br>  Plaintiffs,<br><br>v.<br><br>SEARS, ROEBUCK AND CO. and<br>AMERICAN YARD PRODUCTS,<br>a division of WCI OUTDOOR<br>PRODUCTS, INC.,<br><br>  Defendants, | § § § § § § § § § § § § § § § § § | UNITED STATES COURTS<br>SOUTHERN DISTRICT OF TEXAS<br>ENTERED<br><br>SEP 2 1 1998<br><br>MICHAEL N. MILBY, CLERK OF COURT |
| SEARS, ROEBUCK AND CO. and<br>AMERICAN YARD PRODUCTS,<br>a division of WCI OUTDOOR<br>PRODUCTS, INC.,<br><br>  Third Party Plaintiffs and<br>  Counter-Defendants,<br><br>v.<br><br>JUDY GAIL BORDEN,<br><br>  Third Party Defendant and<br>  Counter-Plaintiff. | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. V-96-099 |

### ORDER

Pending before the Court is Defendants' Motion to Strike the Expert Designation and Motion in Limine to Preclude the Expert Testimony of William Kitzes (Dkt. #81). Upon considering the motion, the responses thereto, the entire record, and applicable law, the Court is of the opinion that Defendants' motion should be GRANTED.



## ANALYSIS

William F. Kitzes specializes in what he calls "safety analysis."[1] He is a lawyer by training. After graduating from law school in 1975, he began a seven-year tenure at the United States Consumer Product Safety Commission (hereinafter "the Commission"). He first served as a legal advisor at the Commission; in that capacity, he worked with companies to develop "rules and safety notice." He then became a program manager of a "sports and recreation and power equipment team," collecting information from the specialists on his team— whose jobs included analyzing the problem at hand and conducting research— and developing therefrom safety recommendations and standards for the Commission. It was in this capacity that Kitzes helped to develop the federal safety standard for walk-behind power lawn mowers. After his time at the Commission, Kitzes moved on to consulting work, first with the Institute for Safety Analysis, then with Consumer Safety Associates, where he presently works. As the firm's only employee, he concentrates almost solely on litigation activities.[2] No stranger to the courtroom, he has testified as an expert in no less than 69 trials.

### A. Qualifications

Kitzes is certainly not an expert in the traditional sense. He has a graduate degree in law, but his work, even in his early days at the Commission, was less legal than bureaucratic.

---

[1] According to Kitzes, "Safety Analysis is the application of principles to the conduct of business, as it relates to the protection of one's customers from foreseeable risks of injury in its broadest sense." Defendants' Motion, Exhibit E, at 6 (Deposition of William F. Kitzes, *Kloepfer v. Honda*).

[2] In 1995, Kitzes estimated that "[n]inety plus percent" of his consulting work involved litigation. Defendants' Motion, Exhibit J, at 336 (Deposition of William F. Kitzes, *Schirmer v. Twin City Motorcycle, Inc.*).

2

His educational forays since graduation from law school consist wholly of four seminars in ergonomics and human factors, safety management, advanced systems safety, and advanced safety management (for a total of eight days) and a weeklong course in human factors. Moreover, he is not licensed in "safety analysis"; indeed, no such license exists.[3] Kitzes is not a mathematician, a statistician, a product designer, an epidemiologist, a physiologist, a communications specialist, an economist, or an engineer. He was not a commissioner at the Consumer Product Safety Commission. Truth be told, the bulk of Kitzes' expertise may now lie in being an "expert." His litigation résumé is most remarkable for its length, and the diversity of subjects on which Kitzes has opined suggests that he is either a Renaissance man of the highest order or a specialist in not much at all. As the Fifth Circuit has cautioned,

> That a person spends substantially all of his time consulting with attorneys and testifying is not a disqualification. But experts whose opinions are available to the highest bidder have no place testifying in a court of law, before a jury, and with the imprimatur of the trial judge's decision that he is an "expert."

*In re Air Crash Disaster at New Orleans*, 795 F.2d at 1234.

Nevertheless, Rule 702's definition of "expert" is a liberal one, embracing "skilled" witnesses. *See* Fed. R. Evid. 702 advisory committee's note. Kitzes maintains, "My background and my experience is my training." Defendants' Motion, Exhibit C, at 125 (Deposition of William Kitzes, *Garza v. Sears*). Clearly, experience can supply an adequate foundation for expertise under the Rule. The relevant inquiry, then, focuses on what precisely Kitzes' experience is. For his first two years at the Commission, Kitzes sat on a Hazard

---

[3] It is true that Kitzes is a member of various "professional safety associations," but most of these do not have very rigorous admissions standards. By way of example, the Human Factors Society requires only endorsement by two members. "Board certification" required that Kitzes take a multiple-choice exam, with no continuing education requirements.

3

Review Committee, which made preliminary determinations concerning the safety of certain products. Mostly, however, it was his duty to negotiate solutions to problems that had already been identified by others. *See* Defendants' Motion, Exhibit A, at 60 (Deposition of William F. Kitzes, *Kenoyer v. Honda*). So, for instance, he helped companies to orchestrate recalls of products deemed unsafe. His second job as program manager at the Commission was "to delegate the work for the team and present it to the Commission." Defendants' Motion, Exhibit E, at 68 (Deposition of William F. Kitzes, *Kloepfer v. Honda*). Essentially, Kitzes was a manager.[4]

What Kitzes is *not* is an expert in safety analysis. Indeed, the "safety analyst" is a chimera. An executive director from the Commission has testified,

> I don't know any one individual who possesses degrees or expertise in a variety of those disciplines.... That's why we work together as a team. What the Commission did as a group was safety management, safety analysis....There isn't any individual at the Commission who pretends to be by themselves [sic] a safety analyst. The only person that I know who holds themself [sic] out to be expert across this area is Bill Kitzes.

Defendants' Motion, Exhibit I, at 4 (Testimony of Richard A. Gross, *Oldeen v. Honda*). More often than not, Kitzes was nothing more than the mouthpiece for others, a liaison between specialists and the commissioners. But Kitzes knew the law animating the Commission, and once data were provided to him, he could make some decision concerning a product's safety, *according to principles and standards promulgated by the Commission.* This

---

[4] The executive director of the Commission illustrated the point:
Q: Was [Kitzes] more or less a coordinator of these various people from the various directorates?
A: That's exactly what he was....But it wasn't his job to analyze their work. It wasn't his job to draw any conclusions. It wasn't his job to investigate any subjects. That was the job of the professionals at the Commission. That's what we wanted them to do, because we hired an economist to make an economic judgment, or an epidemiologist to do epidemiology. We didn't hire lawyers to do that.
Defendants' Motion, Exhibit H, at 1292-93 (Deposition of Richard Gross, *Ladd v. Honda*).

4

much is evidenced by, for instance, his work with the Hazard Review Committee early in his career and, later, his work with various industry groups and standards development committees as Commission representative. Moreover, in his role as program manager, Kitzes undoubtedly gained expertise concerning the products under the scrutiny of his team. So it is probably true, for example, that given his role in the development of 16 C.F.R. § 1205, Kitzes is an expert in the state of the art of push-behind lawnmowers, at least as it existed in the late 1970s.

> In the instant suit, Kitzes plans to concentrate on the following issues:
>
> 1) The methods widely and commonly used by manufacturers described in the scientific, safety management literature to protect consumers from unreasonable risks of injury.
> 2) The information, based on the method described above, used by safety managers in their field of expertise to determine what those risks are and what corrective action is necessary.
> 3) Whether the subject company followed the method above and whether adequate corrective action, including warnings and notice to consumers, was taken to substantially reduce or eliminate the danger.

Plaintiffs' Response, Exhibit A, at 5 (Affidavit of William Kitzes). Insomuch as the first two subjects reflect the knowledge pertaining to principles of safety Kitzes gleaned in his stint at the Commission, the Court is of the opinion that they fall within the realm of his expertise.

But the last subject most decidedly does not. Kitzes has had no experience analyzing the safety or design of riding lawn mowers. He has never received formal training in the design of lawnmowers, and he has never personally tested lawnmowers. This is not a case in which the witness professes to possess specialized knowledge of the riding lawnmower industry's accepted safety standards. The principles of safety analysis which Kitzes propounds

5

exist at an extremely high level of generality,[5] and he makes no persuasive showing of the adoption of his methodology by the riding lawnmower industry. Certainly his two-decade-old experience with the safety of push-behind lawnmowers, as different from riding lawnmowers as they are alike, does not suffice. And his own hurried research in preparation for this litigation does not confer upon him expertise. Even now, he has done no testing, implemented no designs, performed no studies. His preparation consists wholly of the review of 26 documents; mere access to documents that might be excluded as hearsay by a court does not an expert make.[6] *See Kloepfer v. Honda Motor Co., Ltd.*, 898 F.2d 1452, 1458 (10th Cir. 1990) (affirming limitation of Kitzes' testimony to an explanation of principles used in performing a safety analysis).

### B. *Daubert*

The Court assumes that Kitzes' testimony, so limited, is reliable; the principles of safety that Kitzes learned while he worked at the Commission were instrumental in defining safety standards that applied nationwide. Where Kitzes' prepared testimony ultimately fails is

---

[5] The following is an exhaustive list of the principles of safety analysis, according to Kitzes: establish and observe a written safety policy; adequately identify and evaluate product hazards; perform an adequate design review integrating product hazards, the environment, and foreseeable consumer use; monitor the safety performance of the product after sale and use, and take corrective action where necessary; and develop adequate warnings and training to motivate consumers to understand and avoid dangers. *See* Defendants' Motion, Exhibit B, at 1-2 (Letter from William Kitzes to Sherry Rasmus (Oct. 17, 1997).

[6] Even if the Court deemed that Kitzes was qualified to testify about the lawnmower's safety, his testimony on that issue would fail grossly under *Daubert*. Specific safety analysis at the Commission is performed by a "multidisclipinary team." Plaintiffs' Response, Exhibit, at 5 (government's description of the program manager position). While Kitzes eagerly adopts for himself the title "Safety Analyst," he does not—and cannot—adopt the methodologies employed by a team of specialists. He simply does not possess the necessary skills. As he concedes, his opinion (his application of the principles he propounds) is not the result of any testing, and his solo technique flies in the face of Commission procedure.

its "fit" with the issues at trial. His contribution concerning various principles of safety is, in a word, irrelevant.

This is not a suit brought under the Consumer Products Safety Act.[7] Rather, it is a suit sounding in negligence and strict liability, brought under Texas state law. The pertinent inquiry, then, is reasonableness. It is axiomatic that such is true when the plaintiff alleges negligence. *See Missouri, K. & T. Ry. Co. v. Hannig*, 43 S.W. 508, 509 (Tex. 1897) ("The conduct of a man of ordinary prudence, under all the circumstances of the case, is the standard by which the law tests the question of ordinary negligence."). But it is just as true when the plaintiff proceeds under a theory of strict liability. Texas has adopted the theory of strict products liability expressed in Section 402A of the Restatement (Second) of Torts, *see Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 381 (Tex. 1995), and the Restatement imposes liability only for products sold "in a defective condition *unreasonably* dangerous to the user or consumer." Restatement (Second) of Torts § 402A(1) (1965) (emphasis added).

Therefore, the analytic process of a safety manager or a safety analyst, independent of any hard data, does not help the trier of fact one whit. Insomuch as Kitzes proposes to supplement the jurors' knowledge of and appreciation for general notions of "defectiveness" or "dangerousness," *see* Affidavit of William Kitzes, at 4 ("[M]y expertise lies...in evaluation of whether a product and its warning labels are inadequate and therefore unreasonably dangerous for its intended and foreseeable use..."), they, as reasonable people themselves, are fully equipped. That is, negligence and strict liability are defined by the law as matters of common

---

[7] If it were, the testimony of an expert on the law of Consumer Products Safety Act would likely invade the province of the judge. *See Payne v. A.O. Smith Corp.*, 627 F. Supp. 226, 228 (S.D. Ohio) (excluding Kitzes' testimony concerning the Commission's recall rules as impermissible opinion testimony on the law of the forum).

7

sense. Kitzes, by offering nothing more than a methodology for determining dangerousness, is essentially proposing to supplant the jurors' brand of reasonableness with his own. The jury may require aid in comprehending design details, physiological attributes, economic concerns, and the like. But once the data are collected, the jury does not require aid in determining reasonableness. The jury does not require the aid of, essentially, another juror.

## CONCLUSION

Because there is no helpful connection between Kitzes' testimony and the inquiry before the factfinder, Defendants' Motion to Strike the Expert Designation and Motion in Limine to Preclude the Expert Testimony of William Kitzes (Dkt. #81) is GRANTED.

It is so ORDERED. The Clerk shall enter this order and provide a true copy to all parties.

Signed this 20th day of September, 1998.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE